IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CHRISTOPHER MALLETT                                                              PLAINTIFF
ADC #130750

v.                                    3:21-cv-00157-DPM-JJV

KENNETH DAVIS,
Deputy Warden, Grimes Unit, ADC; *et al.*                                      DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

I.   **INTRODUCTION**

Christopher Mallett ("Plaintiff") is a prisoner in the Grimes Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint seeking relief pursuant to 42 U.S.C. § 1983. (Doc. 2.) Plaintiff's remaining claim is that Chaplain Robert Freeman violated his First Amendment right to freely exercise his Rastafarian religious beliefs by not giving him permission to wear his hair in dreadlocks.[1] (*Id*.) Plaintiff brings this claim against Defendant Freeman in

---

[1] All other claims and Defendants have been previously dismissed without prejudice. (Docs. 8, 39.)

his official and personal capacities. (Docs. 2, 50.) And he seeks damages, as well as injunctive relief. (*Id.*)

Defendant Freeman has filed a Motion for Summary Judgment arguing he is entitled to sovereign and qualified immunity. (Docs. 47-49). Plaintiff has filed a Response. (Doc. 50.) After careful consideration and for the following reasons, I recommend the Motion be GRANTED, Plaintiff's First Amendment claim against Defendant Freeman be DISMISSED with prejudice, and this case be CLOSED.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material

will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**III.   FACTS**

In January 2021, Plaintiff sent Chaplain Freeman a written request asking his religious preference be changed in the ADC's records from Islam to Rastafari. (Doc. 47-2 at 8-10.) Chaplain Freeman did so. (*Id*.) Because Plaintiff's religious beliefs prohibit him from cutting or combing his hair, he began to wear it in dreadlocks, which he believes to be sacred. (*Id*.) Dreadlocks are hair that is "matted," "bound up," or knotted" such that fingers and combs cannot be run through the individual dreadlocks. (Docs. 47-2 at 14; Doc. 47-3 at 2.) The ADC's hair policy, which is found in Administrative Directive 16-01 § (II)(B), says "[a]ll inmates must maintain a hair style that is worn loose, clean, and neatly combed." (Doc. 47-5 at 1). And "[n]o styles are permitted that make it difficult to search the hair, including cornrows, braids, pony tails, or dread locks." (*Id*.) The purpose of the policy is to prevent inmates from hiding contraband in their hair and to allow guards to search it with a comb. (Doc. 47-3.) And according to the affidavit of the ADC Emergency Preparedness Coordinator, drugs, weapons, needles, SIM cards, handcuff keys, and other items have been previously found in inmates' hair. (Doc. 47-3.)

Sometime in February 2021, Plaintiff sent a written request to Chaplain Freeman asking for an exemption or "religious script" authorizing him to wear dreadlocks. (Doc. 47-2 at 16-17.) Plaintiff says he never heard back from Chaplain Freeman, and he never spoke to him personally about the matter.[2] (*Id.*) In July 2021 and thereafter, Plaintiff received disciplinary convictions

---

[2]   In the Complaint, Plaintiff says Deputy Warden Davis "harassed" him about his hair. (Doc. 2 at 4.) During screening, I entered an Order explaining mere verbal harassment was not sufficient to plead a plausible § 1983 claim, gave Plaintiff thirty days to file an Amended Complaint curing that pleading deficiency, and cautioned him I would recommend Defendant Davis be dismissed without prejudice if he did not do so. (Doc. 3.) Plaintiff did not file an Amended Complaint,

for violating the ADC's hair policy and was placed in restrictive housing.³ (Doc. 47-1.) Plaintiff says the Warden told him he could not leave restrictive housing until he either cut or removed his dread locks. (Doc. 47-2 at 6-7.) After six months in restrictive housing, Plaintiff says he "ripped" his dread locks apart, causing pain and bleeding. (*Id*.) Because he had removed his dreadlocks, prison officials released Plaintiff from restrictive custody in January 2022. (*Id*; Doc. 47-1.) On September 26, 2022, the ADC Director authorized Plaintiff to wear his hair in dreadlocks in accordance with his religious beliefs. (Doc. 47-1, Doc. 50.) That accommodation went into effect immediately, and it applies to any ADC facility where Plaintiff may live.

## IV.   ANALYSIS

### A.   Sovereign Immunity

Defendant Freeman argues he is entitled to sovereign immunity from the claim raised against him in his official capacity. I agree. The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*; *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). Defendant Freeman is a state official. And, the State of Arkansas has not waived its

---

and he did not object to my Recommendation that Defendant Davis be dismissed without prejudice because he had not pled a plausible claim against him. (Docs. 7, 8.) In a grievance attached to Defendants' exhaustion motion, Plaintiff said that, on February 25, 2021, Deputy Warden Davis told him he would get a disciplinary conviction for violating the ADC's hair policy if he did not cut or "take down" his dreadlocks. (Doc. 21-3.) Although he had ample opportunity to do so, Plaintiff did not plead that Deputy Warden Davis was personally involved in punishing him for exercising his religious beliefs.

³ Plaintiff's First Amendment claims against the Defendants who allegedly gave him those disciplinary convictions have been dismissed without prejudice due to a lack of exhaustion. (Doc. 39.)

Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, Defendant Freeman is entitled to sovereign immunity from Plaintiff's request for monetary damages against him in his official capacity.

Sovereign immunity does not apply to Plaintiff's requests for injunctive relief or money damages from Defendant Freeman in his personal capacity. *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The latter exception will be discussed in the qualified immunity section of this Recommendation. As for injunctive relief, the parties agree Plaintiff has been allowed to wear his hair in dreadlocks since September 26, 2022. (Doc. 47-1; Doc. 50.) Thus, his request for injunctive relief is moot. *See Zajrael v. Harmon*, 677 F.3d 353, 354(8th Cir. 2012); *Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007). For these reasons, I recommend Plaintiff's official capacity claim against Chaplain Freeman be dismissed with prejudice.

### B.  Qualified Immunity

Defendant Freeman argues he is entitled to qualified immunity from Plaintiff's request for monetary damages from him in his personal capacity. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Defendant Freeman is entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would

not have known that his or her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dept.*, 987 F.3d 767, 770 (8th Cir. 2021). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019). I find Defendant Freeman is entitled to qualified immunity based on the first prong of the analysis.

To prevail on a free exercise claim under the First Amendment claim, prisoners must first demonstrate the governmental action created a "substantial burden" on their ability to practice their religion. *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2008); *Murphy v. Mo. Dept. of Corrs.*, 372 F.3d 979, 982-83 (8th Cir. 2004). If they meet satisfy that requirement, the government must then show the impairment or restriction was "reasonably related to legitimate penological interests." *Gladson v. Iowa Dept. of Corrs.,* 551 F.3d 825, 831-32 (8th Cir. 2009) (quoting *Turner v. Safely*, 483 U.S. 78, 89 (1987)). When making that determination, the court must consider whether: (1) there is a valid rational connection between the prison regulation and the government interest justifying it; (2) there is any alternative means for the inmate to exercise that right; (3) an accommodation would have a significant ripple effect on guards, other inmates, and prison resources; and (4) there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests. *Turner,* 482 U.S. at 89-91; *Gladson,* 551 F.3d at 831. Applying this analysis, two decisions from the Eastern District of Arkansas have found genuine issues of fact remain as to whether the ADC's prohibition against wearing dreadlocks violates prisoners' First Amendment rights. *See Pitts v. Payne*, No. 4:20-cv-849-KGB-ERE, 2021 WL 7186140, at *4 (E.D. Ark. Aug. 10, 2021), *rec. adopted*, 2022 WL 586847 (E.D. Ark. Feb. 25, 2022) (set for trial the week of January 30, 2023) (Doc. 53); *Cox v. Payne*, No. 5:19-CV-54-DPM-

PSH, 2021 WL 906359, at *7 (E.D. Ark. Jan. 20, 2021), *rec. adopted*, 2021 WL 885586 (E.D. Ark. Mar. 9, 2021) (settled December 22, 2021) (Docs. 72-74).[4]  And I find the reasoning of both opinions to be sound.  However, the matter does not need to be decided in this case for an important reason.

Because there is no vicarious liability in § 1983 actions, a prisoner must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  According to the affidavit of John Moss, who is the current Deputy Warden of the Grimes Unit, Chaplain Freeman did not have the authority to grant an accommodation or religious exemption to the ADC's hair policy.  (Doc. 47-2.)  Instead, only the ADC Director has the power to do so.  (*Id*.)  And he says Plaintiff did not contact the ADC Director's office about obtaining a religious exemption.  (*Id*.)  Finally, Deputy Warden Moss says Chaplain Freeman was not involved Plaintiff's disciplinary convictions or assignment to restrictive housing due to his refusal to remove his dreadlocks.  (*Id*.)  Plaintiff does not challenge these assertions in his Response.  (Doc. 50).  However, I note in his deposition and grievances, Plaintiff said Sergeant Sparks (a former Defendant in this case) told him Chaplain Freeman had the authority to issue a religious exemption for dreadlocks.  (Doc. 21-3; Doc. 21-4; Doc. 47-2 at 7-8.)  And Plaintiff says he heard from inmates that chaplains at other ADC Units had granted such exemptions.  (*Id*.)  But what officers or inmates told Plaintiff about what they believed Chaplain Freeman had the authority to do is inadmissible hearsay.  *See Glover v. Bostrom,* 31 F.4th 601, 605 (8th Cir. 2022) (out of court statements made to a prisoner are hearsay and cannot be used to defeat summary judgment); *Mick v. Raines*, 883 F.3d 1075, 1080

---

[4] In *Pitts* and *Cox*, the Courts also found triable issues on the prisoners' challenges raised under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  Plaintiff has not raised a RLUIPA claim in this case.

7

(8th Cir. 2018) (hearsay cannot be used to create a genuine issue of material fact). At summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010); *see also Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (the trial "court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial"). Because Plaintiff has not presented any admissible evidence suggesting Chaplain Freeman had the authority to issue a "religious script" exempting him from the ADC's hair policy or that he was otherwise personally involved in punishing Plaintiff for refusing to remove his dreadlocks, I conclude Chaplain Freeman is entitled to qualified immunity. Accordingly, I recommend Plaintiff's personal capacity claim against Defendant Chaplain be dismissed with prejudice.

## V.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendant's Motion for Summary Judgment (Doc. 47) be GRANTED, Plaintiff's First Amendment claim against Defendant Freeman be DISMISSED with prejudice, and this case be CLOSED.

2. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation would not be taken in good faith.

DATED this 10th day of November 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE